UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES CHELMOWSKI,

    Plaintiff,

    v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Civil Action No. 17-1394 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff James Chelmowski originally brought this suit under the Federal Tort Claims Act against the United States of America and several government agencies. After multiple revisions to his Complaint, Chelmowski currently alleges that the Environmental Protection Agency, the Federal Communication Commission, and the National Archives and Records Administration have failed to comply with sixteen of his Freedom of Information Act requests. Believing that it has upheld its obligations under FOIA, EPA now separately moves for partial summary judgment. Agreeing that judgment is warranted, the Court will grant the Motion.

**I.    Background**

    A.  FOIA Requests

Chelmowski has made a total of sixteen FOIA requests in this case. The Court, however, need only deal here with the four that relate to the EPA, as the other twelve involve NARA and the FCC, which have filed their own joint Motion for Summary Judgment. See ECF No. 68 (FCC & NARA MSJ). The four requests are: Request EPA-HQ-2017-008255 (8255), Request

1

EPA-HQ-2017-008256 (8256), Request EPA-HQ-2018-007041 (7041), and Request EPA-HQ-007088 (7088). See ECF No. 69-1 (Def. MSJ) at 2.

1. *Request 8255*

Chelmowski filed Request 8255 on June 9, 2017, seeking "communication records including internal and external emails, phone & meeting logs, notes, correspondence, etc." related to him from May 1, 2016, to June 9, 2017, as well as records related to: 1) two of his prior FOIA requests; 2) a federal case listed within the request as "Chelmowski v. FCC, No. 16 cv 5587 (N.D. Ill[.])"; and 3) "emails, notes, logs & correspondence" from certain EPA staff. See ECF No. 69-5 (Exhs. 1–10), Exh. 1 (Chelmowski Undated Email to EPA). On July 6, the EPA began its search, looking for any information to satisfy Chelmowski's inquiry. See ECF No. 69-2 (Def. Statement of Material Facts), ¶ 3.

On January 23, 2018, the agency released 21 documents in full and 20 in part, and it withheld one. See Def. Exh. 8 (1/23/18 Ltr. from Larry F. Gottesman to Chelmowski); ECF No. 69-3 (Declaration of Timothy R. Epp), ¶ 20. Later, after further review, 19 of those 20 partially redacted documents were released in full. See Epp Decl., ¶ 21. The one remaining partially redacted document contains a single private phone number that was withheld under Exemption 6 (privacy). Id. As for the sole document initially withheld in full, Chelmowski does not challenge the EPA's justification that it lacked custody of the document. Id., ¶ 20 n.3. The Court thus need not consider whether it was properly withheld.

2. *Request 8256*

Like Request 8255, Chelmowski filed Request 8256 on June 9, 2017. See SMF, ¶ 9. This time he sought all records from the EPA and other government agencies dated between September 1, 2015, and June 9, 2017, "related to [Chelmowski] the requester." Def. Exh. 9

(Chelmowski Undated Email to EPA). On July 25, 2017, the EPA gave Chelmowski four pages of unredacted documents, see Epp Decl., ¶¶ 27–28, and informed him that it could not provide records for other agencies. See ECF No. 69-6 (Exhs. 11–20), Exh. 14 (7/25/17 Ltr. from Gottesman to Chelmowski).

Chelmowski filed an administrative appeal of this decision through FOIAonline, challenging the EPA's search and its decision not to process his request for FCC and NARA records. See Def. Exh. 15 (8/9/17 Appeal Submission Notification). That appeal was denied on May 8, 2018, as the EPA explained that it had conducted a reasonable search for Chelmowski's requested documents and, additionally, did not have access to the others. See Def. Exh. 17 (5/8/18 Ltr. from Kevin M. Miller to Chelmowski).

   3.  *Request 7041*

On April 25, 2018, Chelmowski made yet another request through FOIAonline for "all records from FOIAonline related to himself and certain, prior FOIA requests and appeals." SMF, ¶ 16; see also Def. Exh. 18 (Chelmowski FOIA Request). Those prior requests and appeals are not at issue here. See SMF, ¶ 16. The EPA otherwise addressed his request and located thirteen relevant records. Id., ¶ 17; see also Def. Exh. 19 (3/6/19 Email from Scott Albright to Chelmowski). Twelve of the thirteen records were released unredacted, and one record was released in part with some portions withheld under Exemption 5 (deliberative-process privilege). See SMF, ¶ 18; 3/6/19 Email from Albright to Chelmowski. After further review, the EPA decided to release the partially redacted document in full. See Epp Decl., ¶ 38.

   4.  *Request 7088*

On April 26, 2018, Chelmowski filed his final request at issue here through FOIAonline, Request 7088. See SMF, ¶ 21. In this request, he asked for all "EPA emails including email

body, heading, metadata, email attachments, etc." that may have any relation to him since January 1, 2014. See ECF No. 69-7 (Exhs. 21–30) at Exh. 21 (4/26/18 FOIA Request Confirmation). The EPA informed Chelmowski that his request was not specific enough and that it needed further clarification. See Def. Exh. 22 (5/8/18 Ltr. from Gottesman to Chelmowski). In response, Chelmowski declined to provide any clarification and, instead, "challeng[ed]" the EPA's "determination that his FOIA request did not reasonably describe the records sought." SMF, ¶¶ 22–25; see also Def. Exh. 23 (5/9/18 Email from Chelmowski to EPA Officials).

Despite Chelmowski's lack of assistance, the EPA conducted a search and released to him 1,287 records in full and 476 records in part while withholding 149 records in full. See SMF, ¶ 32; see also Epp Decl., ¶ 54. All records withheld in full or in part were done so via either Exemption 5 (deliberative-process, attorney-client, and work-product privilege) or Exemption 6 (privacy). See SMF, ¶ 32.

B.  Procedural Background

On July 13, 2017, Chelmowski filed a Complaint for damages under the FTCA against the FCC for "omissions, negligence, violations of law, regulations[,] . . . tortuous [*sic*] action[,] and the FCC's active or fraudulent concealment of its role in . . . injury and financial damages" against him. See ECF No. 1 (Compl.), ¶ 1. On September 21, he amended that Complaint to add the EPA and NARA as Defendants and to better flesh out his FOIA claims, hints of which were in his original Complaint. See ECF No. 6 (Amended Compl.), ¶ 1; see also Compl., ¶¶ 36–38, 44–45, 47–49, 52–57, 60–68, 75.

The Government then moved to dismiss the Amended Complaint on December 29. See ECF No. 12 (Mot. to Dismiss). Chelmowski responded by requesting leave to file a Second

Amended Complaint on February 27, 2018.  See ECF No. 18-1 (2d Amended Compl.).  The Court denied without prejudice that effort to once again amend his pleading and provided him "an opportunity to present a streamlined new Complaint that clearly sets forth his causes of action."  ECF No. 24 (5/15/18 Order) at 1.  Several months later, Chelmowski filed his latest Complaint.  See ECF No. 35 (Renewed 2d Amended Compl.).  The third time's the charm, and this Court, after generously interpreting his pleading, allowed Chelmowski to proceed with his FOIA and Privacy Act claims only.  See ECF No. 36 (9/13/18 Mem. Op. & Order) at 4.

The Government now moves for summary judgment to resolve Plaintiff's FOIA claims involving the EPA only.  It separately seeks summary judgment as to the FCC and NARA, which the Court will address in an accompanying Opinion.  Chelmowski both opposes EPA's Motion and also seeks limited discovery under Federal Rule of Civil Procedure 56(d).  See ECF No. 91 (Pl. Response).  The Court will consider both positions.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute,

5

or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.   Analysis

Chelmowski remains disappointed by the documents that he has received. More specifically, he contends that, first, the EPA did not conduct an adequate and reasonable search in response to his requests. See Pl. Resp. at 10. Next, he appears to maintain that the agency's use of Exemptions 5 and 6 to withhold certain information from disclosure was improper. Id. at

6

14–16. Last, he believes that the EPA's alleged bad faith in responding to his requests makes limited discovery in this case prior to summary judgment appropriate. Id. at 25.

### A. Adequacy of the Search

"An agency fulfills its [search] obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that "set[] forth . . . the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Such affidavits or declarations enjoy a presumption of good faith and, absent contrary evidence, are sufficient to show that an agency complied with FOIA. SafeCard Servs., 926 F.2d at 1200; Larson, 565 F.3d at 862.

Chelmowski argues that the EPA's search for his documents was inadequate, taking particular issue with the fact that "[t]he EPA will not provide the names of who conducted the searches, what were the search terms, whose email accounts were searched, what locations of the search, date of files [sic]." Pl. Resp. at 10. Reading Chelmowski's position liberally, he seems to be suggesting that because the EPA did not provide the above information, its affidavit in support of its search was not "reasonably detailed" enough to be sufficient at the summary-

7

judgment stage. See Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009) (explaining that "the court may rely on a reasonably detailed affidavit" at summary-judgment stage) (emphasis added) (citation omitted).

To begin, "[c]ourts in this District have repeatedly rejected the argument that an agency's [FOIA] declaration must identify the individuals, by name, who conducted the searches." Freedom Watch, Inc. v. Mueller, 453 F. Supp. 3d 139, 149 (D.D.C. 2020) (citing cases). Second, the agency did provide the search terms, the email accounts searched, the locations of the search, and the date of the search. See ECF No. 96 (Def. Reply) at 4–7; Epp Decl., ¶¶ 9, 26–28, 34, 50–51. It did so via several detailed affidavits describing the search process. See Epp Decl., ¶¶ 6–54; ECF No. 69-4 (Declaration of Scott Levine), ¶¶ 10–19. The results may not have been satisfactory to Chelmowski, but "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994)). The search was therefore sufficient.

B. Exemptions

Congress enacted FOIA "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting Dep't of Justice v. Julian, 486 U.S. 1, 8 (1988)). The Government need not, however, turn over requested information that falls into one of nine statutorily created exemptions from FOIA's disclosure directive. See 5 U.S.C. § 552(b)(1)–(9). Those exemptions exist to balance the public interest in government transparency with the interests that could be harmed by the release of certain information. Ctr.

for Investigative Reporting v. U.S. Customs and Border Prot., 436 F. Supp. 3d 90, 98 (D.D.C. 2019).

At issue here are Exemptions 5 and 6. The former applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, under Exemption 5, an agency may withhold from a FOIA requester any "documents[] normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984). The relevant privilege here is the deliberative-process privilege, which permits withholding "predecisional" and "deliberative" agency records, Access Reps. v. Dep't of Justice, 926 F.2d 1192, 1194 (D.C. Cir. 1991), to protect the free exchange of "opinions, ideas, and points of view" within an agency's operations and decisionmaking processes. Ackerly v. Ley, 420 F.2d 1336, 1341 (D.C. Cir. 1969). "Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." Sears, Roebuck & Co., 421 U.S. at 151.

Exemption 6 is more straightforward and protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Additionally, an agency may withhold information under these exemptions — even if it falls within their scope — "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by" the exemption at issue. See 5 U.S.C. § 552(a)(8)(A)(i)(I); see also Reporters Comm. for Freedom of Press v. FBI, No. 20-5091, 2021 WL 2753938, at *2, 11–12 (D.C. Cir. July 2, 2021). The agency invoking an exemption must articulate why disclosure of a particular document would harm a specific interest protected by that exemption. Jud. Watch,

9

Inc. v. U.S. Dep't of Justice, 487 F. Supp. 3d. 38, 44, 46 (D.D.C. 2020); see also Ctr. for Investigative Reporting, 436 F. Supp. 3d at 106 (explaining that agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials" and "connect [such] harms in a meaningful way to the information withheld") (cleaned up) (citation omitted).

With this in mind, Chelmowski appears to take issue with the EPA's use of Exemptions 5 and 6 to redact and reserve documents. See Pl. Resp. at 10–17. Only two of the four requests still contain any redactions or withholdings under either exemption, and Chelmowski's challenge to the agency's Exemption 5 withholdings concerns only the deliberative-process privilege.

　　1. *Request 8255*

The only redaction still present in Request 8255 is a single, private cellphone number. See SMF, ¶ 8. Given that protecting personal information — like a phone number — is directly related to Exemption 6's goal of preventing a "clearly unwarranted invasion of personal privacy," the use of that exemption to block out the cellphone number is appropriate. See 5 U.S.C. § 552(b)(6). This is particularly so here because Chelmowski has not indicated why the public has any interest in obtaining disclosure of the number. See Braun v. U.S. Postal Serv., 317 F. Supp. 3d 540, 550 (D.D.C. 2018) ("[Plaintiff] has not attempted to show any legitimate public interest supporting disclosures of these . . . phone numbers . . . .").

　　2. *Request 7088*

All remaining redactions at issue fall under the umbrella of Request 7088, for which the EPA provides a detailed Vaughn Index. See Def. Exh. 30 (Vaughn Index).

Starting with Exemption 5, Chelmowski asks, "How are the facts regarding the EPA alleged search Deliberative Process/Ex. 5?" Pl. Resp. at 10. In the Vaughn Index, however, the

EPA describes in great detail why it believes that the redactions are appropriate under the deliberative-process privilege. See Def. Reply at 8. To give one example, the agency justified its withholding of an email chain entitled "Subpoena" by describing which agencies and individuals were involved and what kinds of advice and discussions were taking place on the chain. See Vaughn Index at ECF pp. 50–51. Further, the EPA explained that the chain was deliberative and predecisional because it concerned agency discussions surrounding how the agency would respond to the subpoena in question. Id. In another instance involving an email chain captioned "Request for Assistance with Privacy Act Request," the agency described which agencies were involved, which employee sent the initial email, and what the email was about. Id. at ECF p. 53. Here, too, the EPA made sure to lay out why the email chain was deliberative and predecisional — namely, as it was reflective of EPA staff and management discussions in formulating responses to Chelmowski's FOIA and Privacy Act requests. Id. These are just two of many examples, which the Court will not exhaustively outline.

Alternatively, Chelmowski may be arguing that the Vaughn Index does not support the EPA's applications of Exemption 5 because the agency has simply been lying through its teeth throughout this whole FOIA endeavor. See Pl. Resp. at 16 ("EPA fraudulently conceal[ed] . . . . Why did [the EPA attorney] . . . unethically or dishonestly conceal . . . these material facts . . . ?"). Chelmowski nevertheless gives little reason for the Court to doubt the truth of the EPA's Vaughn Index, especially given that "[a]gency affidavits are accorded a presumption of good faith." SafeCard Servs. 926 F.2d at 1200.

In addition to laying out why each redaction or withholding complies with Exemption 5, the EPA also detailed the foreseeable harm to the interests protected by the exemption that would ensue from release of the reserved information. See 5 U.S.C. § 552(a)(8)(A)(i)(I). For example,

concerning the subpoena request discussed above, the EPA explained why disclosure of such inter-agency emails discussing how to handle a subpoena would harm the agencies' decisionmaking processes and ability to frankly discuss and respond to subpoenas. See Vaughn Index at ECF p. 50. Similarly, the agency detailed how disclosure of staff communications regarding how to respond to FOIA and Privacy Act requests would chill the open discussion of issues and approaches for handling future requests. Id. at ECF p. 53. The same is true for the EPA's other Exemption 5 withholdings, which, once again, the Court will not exhaustively survey. The documents, accordingly, were properly reserved.

Regarding Exemption 6, the only information withheld contained personal information of EPA employees. Id. at ECF pp. 50–52, 71. As under Request 8255, the use of Exemption 6 for those documents was also both necessary and reasonable to protect their privacy, and Chelmowski never argues otherwise.

C. Discovery

Plaintiff last cites Rule 56(d) to contend that some form of limited discovery is necessary before the Court rules on Defendant's Motion for Summary Judgment. See Pl. Resp. at 1, 25. From the outset, Chelmowski is mistaken about the point of this Rule. It is meant to provide a form of relief for nonmovants who can specifically show through an affidavit or declaration that they are unable to present the facts needed to justify their opposition to a summary-judgment motion without some form of limited discovery. See Jeffries v. Barr, 965 F.3d 843, 855 (D.C. Cir. 2020). In such declaration or affidavit, the non-movant must, among other things, "describe why those facts [that he hopes to discover] are necessary to the litigation." Id. (quoting Convertino v. U.S. Dept. of Justice, 684 F.3d 93, 99 (D.C. Cir. 2012)). Chelmowski, on the other hand, seems to view the limited discovery sometimes authorized under Rule 56(d) as a

second chance to obtain the documents he alleges the EPA is hiding from him.  See Pl. Resp. at 22–23, 26.  The documents that he seeks to obtain through discovery are not necessary to support his opposition; instead, they are the ultimate aim of the suit.

While discovery in FOIA cases under Rule 56(d) is occasionally permitted, it is typically proper only when a plaintiff has raised a sufficient concern of bad faith by a defendant government agency.  See Cole v. Rochford, 285 F. Supp. 3d 73, 76 (D.D.C. 2018) ("[I]n the FOIA context, courts have permitted discovery only in exceptional circumstances where a plaintiff raises a sufficient question as to the agency's good faith in searching for or processing documents.").  Chelmowski's statements within his affidavit concerning lack of good faith are highly speculative and, in many respects, not even statements that are appropriate for an affidavit.  See, e.g., ECF No. 91-1 (Declaration of James Chelmowski), ¶ 7 ("Probably the Defendants believing the Defendants had done enough defamation of my character . . . will . . . not allow me access to material facts the Defendants[] concealed."); see also, e.g., Aludo v. Denver Area Council, No. 06-2257, 2008 WL 2782734, at *1 (D. Colo. July 8, 2008) ("[A]ffidavits which contain conclusions of law or ultimate facts, or contain arguments and inferences, should be struck.").

If anything, the EPA, in trying to fulfill Chelmowski's FOIA requests, has gone above and beyond what is required and has acted in exceedingly good faith.  More than once, it re-evaluated some of its redactions and withholdings to ensure that he gained access to as much information as he was entitled to.  See SMF, ¶¶ 8, 20, 31.  Despite his refusal to clarify what he was looking for under Request 7088, the EPA still made valiant efforts to identify potential documents.  Id., ¶¶ 22–25, 32.  This is not the behavior one would expect from an agency acting in bad faith.

## IV. Conclusion

For the reasons stated above, the Court will issue a contemporaneous Order granting partial summary judgment to the EPA.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 21, 2021