## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JAMES CHELMOWSKI,**

**Plaintiff,**

v.

**UNITED STATES OF AMERICA,** *et al.***,**

**Defendants.**

**Civil Action No. 17-1394 (JEB)**

### MEMORANDUM OPINION

*Pro se* Plaintiff James Chelmowski has made sixteen Freedom of Information Act and Privacy Act requests to three different Defendants — the Federal Communications Commission, the Environmental Protection Agency, and the National Archives and Records Administration. When the responses did not satisfy Chelmowski, he initiated this action.  The FCC and NARA, to whom twelve requests are directed, have now filed a joint Motion for Summary Judgment. Plaintiff opposes, arguing that the FCC improperly assessed search fees, that neither agency provided sufficient information for him to determine whether an adequate search had been conducted, that both agencies improperly withheld records, and, finally, that limited discovery is necessary before the Court rules.  Having a multitude of arguments, however, does not necessarily mean that any will stick.  Finding for the Government on all issues, the Court will grant its Motion.

## I.    Background

The backdrop for this case began in 2011, when Plaintiff alleged that two informal complaints were filed with the FCC — one by him and the second perhaps by AT&T Mobility LLC "impersonating him."  See ECF No. 1 (Compl.), ¶¶ 11–12, 13, 16.  Chelmowski

subsequently filed a formal complaint with the FCC.  Id., ¶ 21.  While waiting for the agency to address that complaint — which he alleges it did on July 9, 2016, id., ¶ 28 — Plaintiff filed two FOIA requests on September 11, 2015, seeking information about the 2011 informal complaints.  Id., ¶ 36.  After the FCC responded by "provid[ing] . . . FOIA logs," id., ¶ 38, Plaintiff filed a "FOIA Administrative Appeal" on September 30, 2015, concerning solely the informal complaint that he had filed.  Id., ¶ 44.  The FCC "refused to produce these records," id., ¶ 44, and so Chelmowski requested that the "Office of Government Information Services ('OGIS') . . . help mediat[e] to obtain the FCC's Informal Complaint final determination and other withheld records in full or in part."  Id., ¶ 46.  To Plaintiff's chagrin, OGIS denied him mediation services.  Id., ¶ 51.

Convinced that the FCC and NARA, of which OGIS is a part, were withholding pertinent information, Plaintiff then filed sixteen FOIA and Privacy Act (PA) requests seeking all records that concerned the agencies' handling of his informal and formal complaints, previous FOIA requests and subsequent litigation, and information regarding their FOIA policies and guidelines more generally.  See ECF No. 35 (Renewed Second Amended Complaint), ¶¶ 37–38; see also ECF No. 99 (Def. Reply) at 1, 3.  The Court will briefly introduce the twelve requests at issue in this case.

A.    FCC Records

1.  *FCC Request No. 2017-511*

On March 27, 2017, Plaintiff made a PA request for "all records about [himself] . . . in all databases from January 1, 2011, to date of search and production."  ECF No. 68-4, Exh. 1 (Chelmowski 4/3/17 Letter) at 1 (emphasis removed).  One month later, he followed up and identified ten systems of records for the agency to search.  Id., Exh. 3 (Chelmowski 4/24/17

Letter) at 2.  The FCC subsequently identified individuals responsible "for maintaining each of the specified systems of records and directed each of those custodians to search the associated system of records for Mr. Chelmowski's name."  ECF No. 68-3 (Leslie Smith Declaration), ¶ 7. The agency additionally informed Plaintiff that, following Department of Justice guidelines, his request would be processed under both the PA and FOIA, and that while the PA component of the search was being processed without charge, the FOIA request required search fees.  See ECF No. 68-6 (Andrea Kearney Decl.), ¶¶ 19–23.  Chelmowski's subsequent administrative appeal, arguing that the charge of search fees was "illegal," ECF No. 68-8, Exh. 14 (Chelmowski 5/16/17 Letter) at 4, was dismissed by the FCC "for failure to articulate specific grounds for review."  Id., Exh. 17 (Brendan Carr 8/3/17 Letter) at 6.  His PA request, however, yielded results: on July 6, 2017, the FCC released over 1,000 pages of responsive records.  See Smith Decl., ¶ 9; see also ECF No. 68-4, Exh. 8 (Leslie Smith 7/6/17 Letter).

2.  *FCC Request Nos. 2018-410 and 2018-425*

On February 6, 2018, Plaintiff made a joint FOIA and PA request for all records related to prior requests and appeals in Nos. 2016-0768, 2015-769, and 2015-889.  See Smith Decl., ¶ 14; ECF No. 68-5, Exh. 14 (Chelmowski 2/6/18 FOIA PA Request).  Two weeks later, he submitted another request, seeking additional records related to two more prior requests, Nos. 2016-345 and 2016-487.  See Smith Decl., ¶ 15; ECF No. 68-5, Exh. 15 (Chelmowski 2/21/18 FOIA PA Request).  On February 21, after determining that the two requests had substantial overlap, the FCC alerted Chelmowski that they had been consolidated.  See Smith Decl., ¶ 16.

Pursuant to Plaintiff's PA request, the agency provided him with 31 pages of responsive records.  Id., ¶ 23.  With regard to the FOIA portion of his request, however, the FCC informed him that it would send him a bill once the search was completed unless he notified the agency

not to proceed.  See Kearney Decl., ¶¶ 49–52.  Chelmowski did so, thereby forestalling the

search.  Id., ¶¶ 53–54.  Chelmowski then filed another administrative appeal arguing, among

other things, that the agency had artificially "inflated fees" to discourage him from further

pursuing his request.  See ECF 68-10, Exh. 38 (Chelmowski 2/23/18 Email) at 11.  The FCC

dismissed the appeal with respect to the consolidated requests, finding that Plaintiff had again

failed to articulate why the search-fee estimate was unreasonable.  Id., Exh. 40 (Thomas M.

Johnson, Jr. 3/23/18 Letter) at 1–4.

### 3.  *FCC Request No. 2017-903*

On August 15, 2017, Plaintiff requested "'written FOIA Requester's Appeal withdraw

letters or emails to document all those FOIA withdraws and withdraw/close dates' for 20

enumerated FOIA appeals."  Kearney Decl., ¶ 26 (quoting ECF No. 68–8, Exh. 18 (Chelmowski

8/15/17 FOIA Request)).  One week later, the FCC notified him that search fees were associated

with his request and that he had 30 days to make a payment.  Id., ¶ 27.  True to form,

Chelmowski appealed the reasonableness of the search fees, and the appeal was dismissed.  ECF

68–9, Exh. 21 (Johnson 11/3/17 Letter) at 2.

### 4.  *FCC Request No. 2018-311*

On January 10, 2018, Plaintiff requested "electronic cop[ies] of the slides, handouts,

notes, details, etc. from the following: 1) Joint FCC/Department of Justice FOIA Training . . .

[and] 2) FCC FOIA Improvement Act Meeting (July 20, 2016)."  Id., Exh. 22 (Chelmowski

1/10/18 FOIA Request) at 2.  The FCC released 194 pages in response to this request,

withholding phone numbers under FOIA Exemption 4 and other information that it determined

fell under Exemption 5's attorney-client privilege.  Id., Exh. 23 (Vanessa Lamb 2/6/18 Letter) at

1.

     5.  *FCC Request No. 2018-326*

On January 17, 2018, Plaintiff submitted another request, this time seeking "[a]ll policies, handbooks, procedures, documents, correspondence, etc. regarding FCC's Formal Complaint" procedures. Id., Exh. 26 (Chelmowski 1/17/18 FOIA Request) at 2. Again, the FCC notified him of the estimated search fee. Id., Exh. 27 (William Knowles-Kellett 2/21/18 Letter) at 1. Plaintiff responded that the search fees were "gross[ly] exaggerated" and declined to pay. Id., Exh. 28 (Chelmowski 6/19/18 Email) at 1. This time, however, Plaintiff did not file an administrative appeal "or otherwise exhaust the agency's administrative appeals process." Kearney Decl., ¶ 41.

     6.  *FCC Request No. 2018-337*

On January 23, 2018, Chelmowski requested "electronic copies of the manuals, internal communications (memos, emails, etc.), all the details, etc. regarding the FCC email system" and asked for the "administrators of the FCC email" so that he could ask them some questions. Id., Exh. 29 (Chelmowski 1/23/18 FOIA Request) at 2. The FCC responded to the first inquiry by explaining that it did not have such a manual, and to the second by informing him that FOIA "does not require [the FCC] to answer questions or provide justifications for decisions." Id., Exh. 30 (Elizabeth Lyle 2/20/18 Letter) at 1–2.

    B.    <u>NARA Records</u>

     1.  *NARA-NGC-2016-000555*

On May 31, 2016, Plaintiff submitted a request to NARA seeking "[t]he entire file for OGIS Case No. 201600177 Chelmowski and FCC. . . . All communications internal and external including but not limited to electronic communications, email, letters, memos, handwritten notes, conversation logs, etc." ECF No. 68-12, Exh. A (Chelmowski 5/31/16 FOIA Request) at 1. In

response, NARA released 163 pages in part, with some information withheld pursuant to Exemptions 3 (statutorily prohibited information), 5 (deliberative-process privilege), and 6 (personal privacy).  Id., Exh. B (Jodi L. Foor 6/11/16 Letter) at 1.

    2.  *NARA-NGC-2017-000437*

On March 28, 2017, Plaintiff requested "all records about [himself] and/indexed to [his] name . . . in all databases."  Id., Exh. E (Chelmowski 3/28/17 Email) at 2.  Three days later, NARA informed him that it had located 63 responsive documents, totaling 376 pages, id., Exh. H (Floor 5/31/17 Letter) at 1, of which 325 were released in full.  Id.  The other 51 pages were released in part, with information withheld pursuant to Exemptions 5 (deliberative-process) and 6.  Id. at 2.  On June 20, 2017, NARA told Plaintiff that it had found additional documents responsive to his request, and it subsequently released another 38 pages in part, with information withheld pursuant to Exemption 5 (deliberative-process).  Id., Exh. M (Foor 7/20/17 Letter) at 1–2.

    3.  *NARA-NGC-2018-455*

On April 5, 2018, Chelmowski requested "all the FCC compliance documents/records and requirements provided to the National Archives for the FCC e-mails and electronic document management."  Id., Exh. N (Chelmowski 4/5/18 FOIA Request) at 1.  After consulting with the FCC, NARA released 263 pages of documents responsive to this request.  See ECF No. 68-11 (Joseph A. Scanlon Declaration), ¶ 26.  Some pages were released in full, and some were redacted under Exemptions 5 (deliberative-process), 6, and 7(E) (law-enforcement techniques).  Id.

4. *NARA-NGC-2018-508*

On April 26, 2018, Chelmowski submitted a request seeking "all NARA emails and attachments regarding James Chelmowski, [] the requester from January 1, 2014 to the date of this search." ECF No. 68-12, Exh. O (Chelmowski 4/26/18 FOIA Request).  In response, NARA released a total of 3,356 pages of emails and attachments, with some information withheld in part pursuant to Exemption 5's deliberative-process privilege, Exemption 6, and Exemption 7(E). See Scanlon Decl., ¶ 30.

5. *NARA-NGC-2018-550*

On May 11, 2018, Plaintiff submitted a request seeking all "[NARA] FOIA training, policy and procedures for the NARA handling FOIA requests from start to finish including but not limited to FOIA requests submitted by FOIAonline." ECF No. 68-12, Exh. P (Chelmowski 5/11/18 FOIA Request).  NARA released a total of 1,168 pages related to this request, with some information withheld in part pursuant to Exemptions 5 (deliberative-process), 6, and 7(E). See Scanlon Decl., ¶ 34.

C.     Procedural Background

On July 13, 2017, Chelmowski filed a Complaint for damages under the Federal Tort Claims Act against the FCC for "omissions, negligence, violations of law, regulations . . . tortuous [*sic*] action[,] and the FCC's active or fraudulent concealment of its role in . . . injury and financial damages" against him.  See Compl., ¶ 1.  On September 21, he amended that Complaint to add EPA and NARA as Defendants and to better flesh out his FOIA claims, hints of which were in his original Complaint.  See ECF No. 6 (Amended Compl.), ¶ 1; see also Compl., ¶¶ 36–38, 44–45, 47–49, 52–57, 60–68, 75.

The Government then moved to dismiss the Amended Complaint on December 29.  See ECF No. 12 (Mot. to Dismiss) at 1.  Chelmowski responded by requesting leave to file a Second Amended Complaint on February 27, 2018.  See ECF No. 18-1 (Sec. Amended Compl.).  The Court denied this motion without prejudice and provided him "an opportunity to present a streamlined new Complaint that clearly sets forth his causes of action."  ECF No. 24 (5/15/18 Order) at 1.  On September 10, 2018, Chelmowski filed his latest Complaint.  The third time's the charm, and this Court, after generously interpreting his pleading, allowed Chelmowski to proceed with his FOIA and Privacy Act claims only.  See ECF No. 36 (Mem. Op.) at 4.

The Government now moves for summary judgment to resolve Plaintiff's FOIA claims involving the FCC and NARA.  It separately seeks summary judgment as to the EPA, which the Court will address in an accompanying Opinion.  Chelmowski both opposes the Motion and also seeks limited discovery under Federal Rule of Civil Procedure 56(d).  See ECF No. 92 (Pl. Response).  The Court will consider both positions.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials

in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III. Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted). "The basic purpose of FOIA is to ensure an informed

citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds.  See id. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 755.  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Plaintiff contends that the FCC and NARA erred in four essential respects.  He maintains first that illegal search-fee demands were made with respect to several FCC requests.  See Pl. Resp. at 5, 25; see also Def. Reply at 2.  Chelmowski next argues that the agencies have not provided enough information for him to determine if their searches were adequate.  See Pl. Resp. at 14–17; see also Def. Reply at 2.  Third, he claims that they improperly withheld records, see Pl. Resp. at 18, 26; see also Def. Reply at 2; however, most of this argument is spent on FOIA requests and administrative appeals that are not currently before this Court.  See Def. Reply at 2; see also Pl. Resp. at 6–13, 26–28.  Finally, Plaintiff claims limited discovery is necessary under Federal Rule of Civil Procedure 56(d) before the Court decides this Motion.  See Pl. Resp. at 6.  The Court addresses each contention in turn.

A.  Fees

The initial source of disagreement between Chelmowski and the Government is whether the FCC made several types of "illegal fee demands."  Id. at 5, 24–27; ECF No. 92-1

(Chelmowski Decl.) at 12.  First, he claims that for some of his requests, the agency was not

entitled to charge him <u>any</u> search fees.  <u>See</u> Kearney Decl., Exh. 14 (Chelmowski 5/16/17 Letter)

at 4.  Second, with regard to the requests Chelmowski acknowledges may carry some search

fees, he contends that the FCC purposefully conducted the search in an inefficient manner so as

to artificially inflate the cost.  <u>See</u> Pl. Resp. at 5, 31–32; Chelmowski Decl., ¶ 54.  Finally, he

disputes the authority of the FCC to set deadlines under which search fees must be paid in

advance for Request No. 2017-511.  <u>See</u> Chelmowski 5/16/17 Letter at 6.

Agencies are authorized to charge requesters fees to recover costs of processing FOIA

requests and to promulgate regulations outlining "procedures and guidelines" for charging those

fees.  <u>See</u> 5 U.S.C. § 552(a)(4)(A).  Beyond the "first two hours of search time or . . . the first

one hundred pages of duplication," which Plaintiff is entitled to without cost, <u>see</u>

§ 552(a)(4)(iv)(II), an agency can assess search fees, limited to "reasonable standard charges for

document search and duplication."  § 552(a)(4)(A)(ii)(III).

While the standard of review for fee <u>waivers</u> is *de novo*, <u>see</u> § 552(a)(4)(A)(vii), it is

unclear whether that same standard applies to other fee-related decisions.  <u>See</u> <u>Judicial Watch,</u>

<u>Inc. v. U.S. Dep't of Justice</u>, 122 F. Supp. 2d 5, 11 (D.D.C. 2000) (noting lack of clarity).

District courts within this circuit have handled the issue differently, with some applying the

"arbitrary and capricious" standard of review, <u>see</u> 5 U.S.C. § 706(2)(A), and others holding that

*de novo* is the appropriate standard.  <u>Compare</u> <u>Judicial Watch, Inc.</u>, 122 F. Supp. 2d at 12

(finding that "legislative history confirms that *de novo* review applies <u>only</u> to review of fee-

waiver decisions [and that other fee issues] 'will . . . be reviewed under the arbitrary and

capricious standard'") (citation omitted), <u>with</u> <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 133

F. Supp. 2d 52, 53 (D.D.C. 2000) (undertaking *de novo* review of other fee issues.).  This Court

is satisfied that, under either standard of review, Defendant has provided detailed affidavits that successfully demonstrate the reasonableness of the search fees as well as the appropriateness of requiring advance payment for the searches.  For each of Plaintiff's contentions regarding fees, the Government articulates where the argument falls short and why the payments are still required.

For example, Chelmowski maintains that the "FCC has no authority to demand search fees for a Privacy Act request."  Chelmowski 5/16/17 Letter at 4.  As detailed by the Attorney Advisor in the Office of General Counsel for the FCC, the Government processed Chelmowski's request under both the PA and FOIA, and while the "Privacy Act component of [his] request was being processed without charge," for his request to be processed under FOIA as well, search fees were required.  See Kearney Decl., ¶ 23.

The crux of his next claim is that the FCC can conduct a centralized email search in a matter of minutes, and yet it instead pretended that these searches took much longer so that it could charge him exorbitant search fees.  See Pl. Resp. at 26.  As the FCC's Chief Information Officer explains, however, the agency did not yet have the capacity to carry out such centralized searches in 2017, when some of Plaintiff's requests were submitted.  See ECF No. 99-1 (Francisco Salguero Declaration), ¶ 4.

Regardless of this capability, moreover, Plaintiff sought additional documents beyond emails.  Request No. 2017-511, for example, requested "all records about [Chelmowski] . . . from January 1, 2011, to date of search []."  Chelmowski 4/3/17 Letter at 1.  Request No. 2017-903 sought "written FOIA Requester's Appeal withdraw letters or emails to document all those FOIA withdraws and withdraw/close dates" for 20 FOIA appeals.  See ECF 68-8, Exh. 20 (Chelmowski 10/5/17 Letter) at 1.  This argument thus goes nowhere.

With respect to Plaintiff's contention that the requirement of an advance payment was illegal, he neglects to mention that he had failed to pay a search fee for a previous request, thus allowing the FCC to mandate advance payment.  See Kearney Decl., ¶¶ 4–17, 20, 27, 38; see also 5 U.S.C. 552(a)(4)(A)(v) ("No agency may require advance payment of any fee unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250.").

Finally, the Court agrees with the Government that Request No. 2017-511 was "substantially similar" to two of Plaintiff's prior requests at issue in a previous FOIA lawsuit in which the FCC had prevailed on the issue of search fees.  See Kearney Decl., ¶ 21.  Therefore, under the doctrine of *res judicata*, he is precluded from re-litigating the issue of fees here.

The Court thus concludes Plaintiff does not succeed on any of his fee-related positions.

B.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Id.  To meet its burden, the agency may submit affidavits or declarations that explain "in reasonable detail the scope and method of the search conducted."  Perry v. Block, 684 F.2d 121, 127 (D.C.

Cir. 1982).  The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched."  Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  See Perry, 684 F.2d at 127.  "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

Attached to their Motion, Defendants have submitted the Declarations of Leslie Smith, Program Analyst and Privacy Manager in the Office of the Managing Director of the FCC; Andrea Kearney, Attorney Advisor in the Office of General Counsel of the FCC; Joanne Wall, Attorney Advisor in the Office of the General Counsel of the FCC; and Joseph Scanlon, the FOIA and Privacy Act Officer in the Office of General Counsel of NARA, which all explain in detail the steps that Defendants took to search for responsive records, including:

- Searching all systems of records identified by Plaintiff, including the Consumer and Governmental Affairs Bureau, the Enforcement Bureau, and the Office of the General Counsel.  See Smith Decl., ¶¶ 4, 7, 9, 17–22.

- Searching the Office of the General Counsel and the Office of the Managing Director Databases for all information related to the FCC/DOJ Training and the FCC FOIA Improvement Act Meeting.  See Kearney Decl., ¶ 32.

- Working with IT staff to conduct a search of NARA's email system using variations of Plaintiff's name.  See Scanlon Decl., ¶ 44.

- Reaching out to the heads of each FOIA program office under NARA requesting standards and procedures for FOIA processing.  Id., ¶¶ 45–46.

Despite the above-detailed searches, Plaintiff maintains that the agencies "did not meet search requirements" because they failed to provide "the names of who conducted the searches." Pl. Resp. at 14.  He is wrong.  "Courts in this District have repeatedly rejected the argument that

14

an agency's [FOIA] declaration must identify the individuals, by name, who conducted the searches." Freedom Watch, Inc. v. Mueller, 453 F. Supp. 3d 139, 149 (D.D.C. 2020) (internal citations omitted); see Harrison v. Federal Bureau of Prisons, 611 F. Supp. 2d 54, 65 (D.D.C. 2009) (finding plaintiff's claim that the searches were inadequate "because they do not identify, by individual name, who was conducting the search" "frivolous").

Chelmowski also argues that the searches were inadequate because the agencies provided neither the locations nor dates of the various searches. See Pl. Resp. at 14. On the contrary, the FCC and NARA did provide information about the locations searched for requests that they processed under FOIA and the Privacy Act. See Smith Decl., ¶¶ 7–9, 17–18, 22–23; Kearney Decl., ¶¶ 31–32; Scanlon Decl., ¶¶ 6, 15, 35–45. For Requests Nos. 2017-511, 2017-903, 2018-326, 2018-410, and 2018-425, the FCC did not need to provide the locations or dates because it did not conduct FOIA searches at all, as Plaintiff had failed to pay the respective search fees. See Kearney Decl., ¶¶ 21, 23, 27–30, 38–40, 52–55.

Summary judgment is thus proper on the adequacy of the searches.

C. Exemptions

The Court next addresses the propriety of the Government's withholdings, which rely on Exemptions 4, 5, 6, and 7(E). Plaintiff does not directly challenge the applicability of any of the exemptions. Instead, he contends that "the NARA are withholding many documents in full without identifying [] their withholdings" and concludes that this "[p]roves the NARA withholding[s] . . . were not FOIA Exemptions[.]" Pl. Resp. at 18–19. This is not true. NARA released 5,362 pages of records in response to Plaintiff's five requests at issue, withheld in full only 9 pages, and withheld in part 495 pages. See Scanlon Decl., ¶ 47. As for the documents that were withheld in full or in part, the agency prepared a detailed Vaughn Index for each

withholding noting the corresponding Bates-stamped pages.  Id., Exh. Q (Vaughn Index).

Several other records that Chelmowski contends were "illegal[ly] and false[ly] exempt[ed]," Pl.

Resp. at 22, have either already been released, see ECF No. 99 (Scanlon Second Decl.), ¶¶ 8–8b,

or NARA has indicated will be released in full.  Id., ¶ 7.

To the extent Plaintiff makes arguments about the withholdings of other records, he

speaks of documents that are not at issue in this lawsuit — namely, FOIA and PA requests and

appeals submitted by Plaintiff to the FCC and NARA after the agencies filed their Motion for

Summary Judgment.  Any such allegations, see Pl. Resp. at 6–13, 25–28, are not of relevance to

the Court here.  These requests were not mentioned in Chelmowski's operative Complaint, filed

more than two years before the Defendants' Motion, and — as it is "inappropriate for a Court to

consider new claims raised for the first time in a brief in opposition to a motion for summary

judgment" — they are irrelevant to this litigation.  Wright v. U.S. Dep't of Justice, 121 F. Supp.

3d 171, 183 n.7 (D.D.C. 2015); see also Manna v. U.S. Dep't of Justice, 106 F. Supp. 3d 16, 19

(D.D.C. 2015) ("Plaintiff . . . cannot expand the scope of this litigation by merely referring to

other requests in his opposition to Defendants' motion.").

Plaintiff's objections thus cannot defeat the withholdings.

D.  Discovery

Last, Chelmowski claims that he should be "awarded limited discovery because [of the]

bad faith of Defendants' concealment of material facts."  Pl. Resp. at 6.  Defendants assert that

there is "no evidence to support his allegation of bad faith or fraud," and that the "discovery

request is inappropriate and should be denied."  Def. Reply at 17.

"Discovery in FOIA is rare and should be denied where an agency's declarations are

reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute

remains." Baker & Hostetler LLP v. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (internal quotation marks and citation omitted); see also Ocasio v. Dep't of Justice, 67 F. Supp. 3d 438, 440 (D.D.C. 2014) ("[D]iscovery is generally disfavored in FOIA cases.") (quotation marks and citation omitted).

Discovery is thus only warranted if Defendants' declarations at this stage in the litigation evince bad faith. The Court cannot find that Chelmowski has demonstrated ongoing deficiencies or otherwise "made a sufficient showing that the agency acted in bad faith" in processing his requests. Justice v. IRS, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (quotation marks and citation omitted). The only supposed indications of bad faith that he provides are that the individuals personally responsible for the searches were not the ones who submitted the affidavits and that he was not notified of consultations and referrals between the FCC and NARA. See Pl. Resp. at 6. This is not proof of bad faith, however, as "an agency need not submit an affidavit from the employee who actually conducted the search" and may instead "rely on an affidavit of an agency employee responsible for supervising the search," as occurred in this case. Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993). Chelmowski rejoins, somewhat circularly, that if he were allowed discovery, the released documents would prove Defendants' bad faith — which, of course, is what he needs to demonstrate in order for this Court to allow discovery in the first place. See Pl. Resp. at 23. Indeed, Chelmowski erroneously seems to see the limited discovery potentially permitted under Rule 56(d) as a way to obtain the documents that form the basis of the FOIA suit.

Plaintiff's last attempt at demonstrating bad faith is a parroting of his earlier claim that the FCC hid its ability to conduct centralized email searches. Id. at 31. As mentioned above,

however, in 2017 the FCC did not have this centralized database.  What Plaintiff sees as proof of bad faith is therefore nothing more than proof of technological advance.

Given that "discovery is an extraordinary procedure in a FOIA action," <u>Thomas v. Dep't of Health and Human Servs.</u>, 587 F. Supp 2d 114, 114 n.2 (D.D.C. 2008), and given that the Court finds no evidence of bad faith, it will deny Chelmowski's Motion.

## IV.   Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting partial summary judgment to the FCC and NARA.

<u>/s/ *James E. Boasberg*</u>
JAMES E. BOASBERG
United States District Judge

Date:  <u>July 21, 2021</u>